UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| VERONICA ROMERO, individually and as parent and next friend of B.Y.R. and I.R. and MAYRA YVETTE RIVERA, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CAUSE No. 2:14-cv-325-JVB-PRC |
| MICHAEL A. BROWN, in his official Capacity as LAKE COUNTY CLERK; WILLIAM C. VANNESS II, M.D., in his Official capacity as the COMMISSIONER INDIANA STATE DEPARTMENT OF HEALTH; and GREG ZOELLER, in his Official capacity as INDIANA ATTORNEY GENERAL, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

For centuries before Henry VIII, the Church was the arbiter of marriage in the western world. She defined marriage, granted it, and declared dissolutions when warranted; the sovereigns meanwhile deferred to the Church in these matters. This changed with Henry VIII, who, having become the head of the Church of England chipped away at the Church's authority to define---or recognize, as the Church would view it---what marriage is. As the Sovereign and the Supreme Head of the Church of England became one, so did the state and church. With the growth of new governments in the continent and the unified church and state becoming the norm, marriage, in additional to its original attributes, began to be viewed as the good of the state. (And when, as was in the case of French revolution, the church and the state were separated, the state retained its authority over marriage.) The state's authority over marriage also travelled to the new world, and, by the time the U.S. Constitution was adopted, "the states . . . possessed full

power over subject of marriage and divorce . . . ." *Haddock v. Haddock*, 201 U.S. 562, 575 (1906).

Another major change to the definition of marriage came centuries later when no-fault divorce became the normative law in the majority, and eventually all, of the states. Suddenly, an unconditional "I take thee . . . until death do us part" turned into an optional "I take thee . . . so long as I wish." Fifty years later, what's left of the concept of marriage in the western civilization as permanent, exclusive, and monogamous union between a man and a woman has once again been redefined by some states in the Union to include persons of the same sex. While those states are still the minority, they are a fast growing minority, aided by almost unanimous court rulings in many of the majority states that marriage must necessarily include persons of the same sex not to be discriminatory.[1]

So it has become in the Seventh Circuit. In *Baskin v. Bogan*, 2014 WL 4359059 (7th Cir. Sep. 4, 2014), the Court of Appeals struck Indiana's statute defining marriage as a union between a man and a woman as unconstitutional.[2] On the one hand, the ruling can be seen as an eventual consequence of earlier redefinitions of marriage; on the other, the ruling is founded in new social science theories about the nature of homosexuality and certain studies about the welfare of children raised in same sex unions.

In striking Indiana's statute, the Court of Appeals did not invoke any limiting principle to the new definition of marriage, but for the time being, the law in Indiana, although suspended pending the review in the Supreme Court of the United States, is that same-sex persons may

---

[1] To date, only district court in the Eastern District of Louisiana has upheld a state's ban of homosexual marriage. *Robicheaux v. Caldwell*, Civil Case No. 13-5090, 2014 WL 4347099, *12 (E.D. La. Sept. 3, 2014) ("[T]he defendants have shown that Louisiana's decision to neither permit nor recognize same-sex marriage, formed in the arena of the democratic process, is supported by a rational basis.").
[2] The same opinion also struck a similar law in Wisconsin.

marry in the state and enjoy the benefits accorded by the state. On the heels of this change, Plaintiffs in this case seek an injunction for recognition by the State of Indiana of their out-of-state same-sex marriage. To this end, they moved for a Temporary Restraining Order, but while the court was reviewing the submissions, the parties jointly stipulated that certain relief be accorded to Plaintiffs while *Bogan*, *supra*, is pending an appeal in the Supreme Court of the United States.

In particular they agree that Defendants will not enforce Indiana Code § 31-11-1-1(b) against Plaintiffs and will recognize their out-of-state marriage. And, should either adult Plaintiff die, the Department of Health will issue a death certificate recording the deceased Plaintiff's status as "married" and list the other adult Plaintiff as the "surviving spouse." Moreover, they agree that the Department of Health assist local health departments, funeral homes, physicians, coroners, medical examiners, and others involved in the completion of death certificate to understand their duties under this agreement.

The parties also agree that the case should otherwise be stayed until the Supreme Court issues its decision regarding the appeal in *Bogan*.

This being an adversarial legal system, the Court will stay the case as requested. However, it sees no point for a preliminary injunction pending an appeal in *Bogan* where the parties have voluntarily agreed to their rights and obligations. If it turns out that the agreement, as expressed in the stipulation (DE 12-1) is not followed, the court can reconsider the matter then.

For these reasons, the court DENIES AS MOOT Plaintiffs' Motion for a Temporary Restraining Order and ORDERS the Clerk to stay this case. Once *Bogan* appeal is resolved, Plaintiff should move to lift the stay.

SO ORDERED on September 11, 2014.

  s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE